IN THE UNITED STATES DISTRICT COURT FOR
THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| Maria Gonzalez<br>5804 Woodlawn Green Ct<br>Apt. B<br>Alexandria, Virginia 22309<br>          Plaintiff,<br>     v.<br>Jersey Style Films, LLC<br>1523 Bainbridge Street<br>Philadelphia, Pennsylvania 19146<br><br>          and<br><br>Nathan File<br>364 B Lakehurst Road<br>Browns Mills, New Jersey 08015<br>                              Defendants | CIVIL ACTION NO.<br><br>JURY TRIAL DEMANDED |

Plaintiff Maria Gonzalez brings this action against Defendants Jersey Style Films, LLC and Nathan File, alleging as follows:

## I.    PARTIES

1.    Plaintiff Maria Gonzalez ("Plaintiff") is an adult individual and a citizen of the Commonwealth of Virginia residing at 5804 Woodlawn Green Ct, Apt. B, Alexandria, Virginia 22309.

2.    Defendant Jersey Style Films ("JSF" or "Defendant") is a film production company, and a Philadelphia corporation with a principal place of business located at 1523 Bainbridge Street, Philadelphia, Pennsylvania 19146.

3.    Defendant Nathan File ("File" or "Defendant") is a co-owner of JSF, and an adult individual and a citizen of the State of New Jersey residing at 364 B Lakehurst Road, Browns Mills, New Jersey 08015.

1

4. At all times material hereto, JSF acted by and through its authorized owner, agents, servants, workmen and/or employees, all of whom were acting within the course and scope of their employment or agency for JSF.

## II. JURISDICTION AND VENUE

5. This Court has jurisdiction over this action pursuant to 28 U.S.C. § 1332(a)(1) because the matter in controversy exceeds the sum or value of $75,000.00, exclusive of interest and costs, and is between citizens of different States.

6. Venue is proper in this judicial district pursuant to 28 U.S.C. §1391(b) because JSF is a corporation with a place of business here; Defendants are subject to personal jurisdiction in this district; and the wrongs averred herein occurred in part here; and JSF and File transacts their affairs here.

## III. FACTUAL BACKGROUND

7. Plaintiff Sergeant First Class Maria Gonzalez ("Plaintiff") joined the New Jersey Army National Guard in September of 1992.

8. During her career, Plaintiff served as a Dental Specialist and Recruiting and Retention NCO, Personnel Service Sergeant, Instructor/Writer, Travel and Transportation NCO, and Casualty Assistance NCO, Platoon Sergeant for Warrior Transition Unit. Plaintiff participated in Operation Enduring Freedom during her deployment to Kabul, Afghanistan.

9. Plaintiff met File at the Army Reserve Unit at Fort Dix, New Jersey in 2007.

10. At that time, File became Plaintiff's mentor and confident, and when Plaintiff was deployed to Afghanistan in 2013, File helped keep Plaintiff focused, and she leaned on him because he had trained other men and women who were deployed to war zones, and she respected his knowledge.

11. Throughout the following years, Plaintiff's friendship with File deepened, and she trusted him as a fiduciary, and he responded, affirming he was a fiduciary to Plaintiff by urging her to trust and confide in him, and rely on him for advice in financial and other matters, claiming he had acquired insight, knowledge, and experience in those areas.

12. Plaintiff was honorably discharged from the Army in 2017 due to disability from post-traumatic stress disorder, which among other things, had caused her to question her own beliefs and ability to make sound decisions, and to become more gullible and reliant on supposed advisors, coaches, and people who gained her trust, and also to be less discriminating and judicious in selecting people to trust who claimed to be interested in helping her.

13. In June of 2015, while Plaintiff was still working as a staff member for the Wounded Warrior Unit, File drove to Plaintiff's apartment in Alexandria, Virginia, and taking advantage of Plaintiff's and File's relationship and her disability, he asked her for a loan for his film production company, JSF, that was based in Philadelphia.

14. Plaintiff informed File that any monies that Plaintiff would be lending Defendants represented her life's savings and security for post-military life.

15. By assuring Plaintiff she should trust him and JSF to guard her money, and by making representations that he had her interests at heart, File, on his own behalf and as an owner of JSF, intended to, and did, act as a fiduciary to Plaintiff, and caused her to rely on him exclusively.

16. File designed his communications and transactions with Plaintiff so they would not be at arm's length and Plaintiff would rely exclusively on him for the safety of her investment and the return of her money.

17. File, in exploiting Plaintiff's gullibility from her PTSD, assured Plaintiff that she would benefit spiritually and economically, and that he and JSF would never allow her to lose money, and she should rely on his business acumen to help her, that he and JSF only had her best interests at heart, and that he and JSF would only need the money for thirty days or so, because the money was needed for short term production costs and equipment, and she would be repaid within a short period of time.

18. Plaintiff agreed to make the loan, relying on Defendants' promises of repayment plus interest.

19. On June 6, 2015, Plaintiff and File, on behalf of JSF, signed a Letter of Agreement drafted solely by or on behalf of File, with no participation by Plaintiff, who trusted File as aforesaid, whereby Plaintiff would loan File and JSF $70,000 ("June 6th Agreement)". *See* June 6th Agreement attached hereto as Exhibit "A".

20. Pursuant to the June 6th Agreement, Plaintiff was entitled to repayment of the loan plus an additional $10,000, which were to be paid to Plaintiff by November 30, 2015. *See* Exhibit "A".

21. After signing the June 6th Agreement, on June 8, 2015 Plaintiff wired Defendants $60,000.

22. Plaintiff subsequently wired Defendants an additional $10,000 for a total of $70,000.

23. Although Defendants promised to repay Gonzalez within thirty days, they not only failed to do so, but Defendants exploited their fiduciary relationship and Plaintiff's gullibility caused by her PTSD, again assured Plaintiff they had her interest at heart, and she would benefit spiritually and economically, induced Gonzalez to loan them <u>additional money</u>,

4

representing that the additional loan was needed because of high production costs, again with the promise that Defendants only needed the money temporarily, and Plaintiff would be paid back shortly.

24. On September 15, 2015, Plaintiff and File, on behalf of JSF, based on File's exploitation and manipulation of Plaintiff's PTSD and his fiduciary relationship, signed a second Letter of Agreement whereby Plaintiff would loan Defendants $30,000 ("September 15th Agreement"). *See* September 15th Agreement attached hereto as Exhibit "B".

25. Pursuant to the September 15th Agreement drafted solely by Defendants with no participation by Plaintiff, Plaintiff was entitled to repayment of the $30,000 loan plus an additional $5,000, which was to be paid to Plaintiff by November 30, 2015. *See* Exhibit "B".

26. After signing the September 15th Agreement, on September 22, 2015, Plaintiff wired Defendants $30,000.

27. Although File and JSF had not made any payments to Plaintiff despite Defendants' promises and the June 6th and September 15th Agreements, in March 2016 Defendants again exploited Plaintiff and their fiduciary relationship in a repeat of what is described above, and requested another loan from Plaintiff.

28. Plaintiff, due to her impaired sense of skepticism, her PTSD and Defendants' role as a fiduciary to Plaintiff, agreed to loan him and JSF additional money for the company.[1]

29. On March 14, 2016, in addition to the exploitation of Plaintiff's PTSD and Defendants' role as a fiduciary to Plaintiff, as described above, Defendants induced Plaintiff to loan Defendants an additional $100,000 ("March 14th Agreement"), which, like the other loans, was to be repaid within thirty days.

---

[1] File engaged in a "Nigerian Prince" type scheme of swindling Plaintiff for more and more money on the premise that she would be reimbursed once JSF became profitable following successful movie productions.

30. As of March 14, 2016, Plaintiff was owed a total of $215,000, which included the additional amounts Defendants agreed to pay Plaintiff on the loans.

31. Soon after making the March 14th loan, Plaintiff disclosed the loans to family and friends who helped Plaintiff realize that Defendants had no intention of voluntarily repaying her, and she began demanding repayment of all the loans.

32. Fearing that Plaintiff would file criminal charges or take other action, File and JSF paid Plaintiff $25,000 over the course of five months before stopping payments.

33. Despite repeated requests from Plaintiff, no further repayments on the loans have been made by Defendants.

34. Defendants owe Plaintiff the amount of $190,000, net of interest.

35. Plaintiff has recently been designated by the Department of Veterans Affairs as 100% service-connected disabled, and the $190,000 which Defendants refuse to pay her represents Plaintiff's life savings which were to be used to support her in her post-military life.

## COUNT I – BREACH OF FIDUCIARY DUTY
### Plaintiff Gonzalez v. All Defendants

36. Plaintiff hereby incorporates the above paragraphs as if set forth at length herein.

37. Defendants knew of Plaintiff's impairment from her PTSD and exploited her gullibility and trust in File to create and breach the fiduciary obligation of the utmost good faith and loyalty owed to Plaintiff through the following acts of malfeasance. As described above, Defendants created a fiduciary relationship by their said representations and actions that were designed to:

(a) Induce Plaintiff to trust and rely on File's business acumen and his insight, knowledge, and expertise in that area, and that both Defendants knew more about business than Plaintiff, and she would benefit as aforesaid;

6

(b) Defendants exploited the effects Plaintiff suffered from her PTSD, as aforesaid, and assured Plaintiff that she could trust Defendants to guard her money and to rely on them exclusively for the safety of her investment and the return of her money; and

(c) Defendants tricked Plaintiff into loaning them money with the knowledge that they would repay her as promised.

38. Defendants' acts of malfeasance, described above, have been malicious, deliberate, intentional, outrageous, wanton and/or reckless, and entitle Plaintiff to punitive damages.

39. As a direct and proximate result of Defendants' breach of fiduciary duty, Plaintiff has and will continue to suffer economic damages in an amount in excess of $75,000 excluding interests and costs.

WHEREFORE, Plaintiff requests this Court enter judgment in her favor and against Defendants File and JSF and award her damages in an amount in excess of $75,000, plus interest, costs, attorney's fees, punitive damages, and any other relief that the Court deems just and appropriate.

### COUNT II - FRAUD
### Plaintiff Gonzalez v. All Defendants

40. Plaintiff hereby incorporates the above paragraphs as if set forth at length herein.

41. In committing the acts described above and making the alleged statements to Plaintiff, and with the intention of deceiving Plaintiff, Defendants, through File, lied to Plaintiff, telling her that JSF had contracts and business that would generate funds to repay her, that paying her would be the highest priority, and Plaintiff would benefit by making the loans, as described above, and she relied on Defendants due to PTSD.

42. Defendants further deceived Plaintiff by stating that they only needed short term loans for production equipment and costs, and that she would be paid back in around 30 days after making each of the loans based on commitments. All of this was false.

43. The aforementioned statements were false and were fraudulent misrepresentations to Plaintiff with the intent to induce her to provide him with funds, or to forebear from seeking return of such funds, so that he could defraud her and utilize the money for his own purposes; and Defendants knew the misrepresentations were false when made.

44. To her detriment and due to her said impairment, Plaintiff justifiably relied on the said misrepresentations made by Defendants.

45. As a proximate result of Defendants' conduct, Plaintiff suffered damages in an amount in excess of $190,000.

46. Defendants' fraudulent misrepresentations were made with intent, willfulness and malice such that punitive damages should be awarded.

WHEREFORE, Plaintiff requests this Court enter judgment in her favor and against Defendants File and JSF and award her damages in an amount in excess of $75,000, plus interest, costs, attorney's fees, punitive damages, and any other relief that the Court deems just and appropriate.

## COUNT III - CONVERSION
### Plaintiff Gonzalez v. All Defendants

47. Plaintiff hereby incorporates the above paragraphs as if set forth at length herein.

48. Defendants stole, misappropriated, and/or deprived Plaintiff of her personal property, being money.

49. Plaintiff has requested that the monies loaned to Defendants File and JSF be repaid, along with the promised interest on the loans.

50. Defendants have taken Plaintiff's property belonging to Plaintiff, and converted the same to their own use, and have refused to return the property to Plaintiff.

51. Defendants did not have consent from Plaintiff to convert her property.

52. Defendants had no lawful justification for converting the property belonging to Plaintiff.

53. Defendants' conversion of the property from Plaintiff was done with intent, willfulness and malice such that punitive damages should be awarded.

WHEREFORE, Plaintiff requests this Court enter judgment in her favor and against Defendants File and JSF and award her damages in an amount in excess of $75,000, plus interest, costs, attorney's fees, punitive damages, and any other relief that the Court deems just and appropriate.

## COUNT IV
## IN THE ALTERNATIVE, BREACH OF CONTRACT
### Plaintiff Gonzalez v. All Defendants

54. Plaintiff incorporates by reference each of the paragraphs of the Complaint as though fully set forth herein.

55. To the extent that Plaintiff was not too impaired to withstand the exploitation and fraud practiced by Defendants as aforesaid, and Plaintiff was legally able to enter into an agreement with Defendants, the failure of Defendants to pay Plaintiff constituted a default under the said agreements.

56. Pursuant to the June 6th, September 15th and March 14th Agreements (collectively, the "Agreements"), Defendants promised to repay Plaintiff the $200,000 she loaned to them, plus an additional $15,000 in interest.

57. Defendants have only re-payed Plaintiff $25,000 owed on the Agreements as of this date, despite repeated requests from Plaintiff for payment.

58. Defendants' refusal to repay Plaintiff the $190,000 owing to her pursuant to the Agreements constitutes breach of contract.

59. As a direct and proximate result of Defendants' breach of contract Plaintiff has incurred and will incur monetary damages in an amount in excess of $190,000.

WHEREFORE, Plaintiff requests this Court enter judgment in her favor and against Defendants File and JSF and award her damages in an amount in excess of $190,000, plus interest, costs, and any other relief that the Court deems just and appropriate.

Samantha E. Green, Esquire
**Sidkoff, Pincus & Green, P.C.**
1101 Market Street
Suite 2700
Philadelphia, PA 19107
215-574-0600
215-574-0310 (fax)
sgreen@sidkoffpincusgreen.com

Dated: 7/1/19

# EXHIBIT A

Letter of Agreement Date: June 6, 2015 ("Effective Date")
Between:

INVESTEE:   Jersey Style Films LLC.
Nathan File
Magnolia Street
Camden, New Jersey 08103
609-332-9945

INVESTOR:   Maria E. Gonzalez
5709 Woodlawn
Green Circle APT. F
Alexandria, VA 22309
908-358-2129

The purpose of this Agreement is to foster for the long term a mutually Beneficial "win-win" partnership between the two parties and their Officers. This agreement will encompass the amount of investment, the return on investment, and the time of understanding of receivership of documents and monies pertaining to events surrounding this deal.

Access to the information by all executives relating to this agreement.

Available to attend event at no cost to Investor to establish and get an understanding of what the project entails.

**POINT OF INVESTMENT AGREEMENT**

1.1 **Investor:** Maria E. Gonzalez Investment Amount Means; an Amount equal to SEVENTY THOUSAND DOLLARS ($70,000.00) "Initial Investment." Investor.

1.2 **Investee:** Jersey Style Films LLC will receive "Initial Investment." from Investor in the amount of SEVENTY THOUSAND DOLLARS ($70,000.00)

1.3 Return on Investment Means: The Investor will receive the amount of the initial investment of $70,000.00 plus ($10,000.00).

1.4 The settlements of all financial payments do on or between November15 to 30th 2015. This will be after all payments to the venues and taxes and interest are reimbursed to the appropriate entities.

1.5 The first payments back to the investor will be made and cleared. Meaning the total in the amount of $80,000,00 USD will be paid back to investor after Box-office settlements.

MEG
ng

1.6 The investor has the option of withdrawing all of investment after first show. Via conversation has been explained to investor about the interest in continues "**rollover**" of capital investment on the explained "Three events".

This Agreement is covered and protected by the state of origin. If there are to be any explanations, paragraphs, or any other items added or subtracted from this agreement, all parties are with the below signatures agreeing on all parts of this agreement in a court of law in the state of New Jersey is Origin.

This Agreement is binding as it stands and will commence on all parties signature and dated.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the state of New Jersey, exclusive of choice-of-laws provisions.

1.7 Assignment. No party may assign such party's rights or obligations under this Agreement without the consent of all parties hereto.

1.8 Amendment; Waiver. This Agreement may not be amended, supplemented, canceled or discharged, except by written instrument executed by the party against whom enforcement is sought. No failure to exercise, and no delay in exercising, any right, power or privilege hereunder shall operate as a waiver thereof. No waiver of any breach of any provision of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other provision.

This Agreement is executed as of the date first set forth above.

**AGREED TO AND ACKNOWLEDGED BY:**

Investor _Maria C. Gonzalez_   Investee _Nathan File_
DATE _6 JUN 15_               DATE _6 Jun 15_

Maria E. Gonzalez
5709 Woodlawn
Green Circle APT. F
Alexandria, VA 22309
908-358-2129

Jersey Style Films LLC.
Nathan File
1275 Magnolia Street
Camden, New Jersey 08103
609-332-9945

MEG
nf

# EXHIBIT B

Letter of Agreement Date: September, 15, 2015 ("Effective Date")
Between:

INVESTEE:   Jersey Style Films LLC.
            Nathan File
            Magnolia Street
            Camden, New Jersey 08103
            609-332-9945

INVESTOR:   Maria E. Gonzalez
            5709 Woodlawn
            Green Circle APT. F
            Alexandria, VA 22309
            908-358-2129

The purpose of this Agreement is to foster for the long term a mutually Beneficial "win-win" partnership between the two parties and their Officers. This agreement will encompass the amount of investment, the return on investment, and the time of understanding of receivership of documents and monies pertaining to events surrounding this deal.

Access to the information by all executives relating to this agreement.

Available to attend event at no cost to Investor to establish and get an understanding of what the project entails.

**POINT OF INVESTMENT AGREEMENT**

1.1 **Investor:** Maria E. Gonzalez Investment Amount Means; an Amount equal to THIRTY THOUSAND DOLLARS ($30,000.00) "Initial Investment." Investor.

1.2 **Investee:** Jersey Style Films LLC will receive "Initial Investment." from Investor in the amount of THIRTY THOUSAND DOLLARS ($30,000.00)

1.3 Return on Investment Means: The Investor will receive the amount of the initial investment of $30,000.00 plus ($5,000.00).

1.4 The settlements of all financial payments do on or between November15 to 30th 2015. This will be after all payments to the venues and taxes and interest are reimbursed to the appropriate entities.

1.5 The first payments back to the investor will be made and cleared. Meaning the total in the amount of $35,000,00 USD will be paid back to investor after Box-office settlements.

*MEG*

*NF*

1.6 The investor has the option of withdrawing all of investment after first show. Via conversation has been explained to investor about the interest in continues **"rollover"** of capital investment on the explained "Three events".

This Agreement is covered and protected by the state of origin. If there are to be any explanations, paragraphs, or any other items added or subtracted from this agreement, all parties are with the below signatures agreeing on all parts of this agreement in a court of law in the state of New Jersey is Origin.

This Agreement is binding as it stands and will commence on all parties signature and dated.

Governing Law. This Agreement shall be governed by and construed in accordance with the laws of the state of New Jersey, exclusive of choice-of-laws provisions.

1.7 Assignment. No party may assign such party's rights or obligations under this Agreement without the consent of all parties hereto.

1.8 Amendment; Waiver. This Agreement may not be amended, supplemented, canceled or discharged, except by written instrument executed by the party against whom enforcement is sought. No failure to exercise, and no delay in exercising, any right, power or privilege hereunder shall operate as a waiver thereof. No waiver of any breach of any provision of this Agreement shall be deemed to be a waiver of any preceding or succeeding breach of the same or any other provision.

This Agreement is executed as of the date first set forth above.

**AGREED TO AND ACKNOWLEDGED BY:**

Investor _Maria E. Gonzalez_  Investee _Nathan File_
DATE _15 SEP 15_  DATE _15 Sept 15_

Maria E. Gonzalez  Jersey Style Films LLC.
5709 Woodlawn  Nathan File
Green Circle APT. F  1275 Magnolia Street
Alexandria, VA 22309  Camden, New Jersey 08103
908-358-2129  609-332-9945

MEG
707